**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-00469-RM

Marie Martinez

      Plaintiff,

v.

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,

      Defendant.

---

**ORDER**

---

**I.    PROCEDURAL HISTORY**

Plaintiff Marie Martinez (plaintiff), applied for social security disability insurance benefits (DIB) on September 8, 2009, alleging disability as of December 12, 2008. (ECF No.10, p.17, 120-23, 127-29). Her claims were initially denied on March 5, 2010. (ECF No.10, pp.70, 73). On March 26, 2010, plaintiff filed her request for an administrative hearing. (ECF No.10, p.69). She was granted a hearing before an administrative law judge (ALJ), appeared, testified and was represented by an attorney at the hearing on April 28, 2011. (ECF No.10, pp.17-26).

The Administrative Law Judge (ALJ) denied plaintiff's application for DIB on June 13, 2011. (ECF No.10, pp.17-26). This denial became the Commissioner of Social Security's (Commissioner) final decision on December 21, 2012, when the Appeals Council denied

plaintiff's appeal of the ALJ's decision. (ECF 10, pp. 1-3). Plaintiff now seeks review of that final decision. (ECF No.13).

## II     FACTUAL HISTORY

### A. Social History

Plaintiff was born on June 22, 1980. (ECF No. 10, pp.17, 120, 127, 134). She was last insured on December 31, 2010. *Id.* She was 28 years old on December 12, 2008, the date of her alleged disability. *Id.* Plaintiff is divorced and has four children ages 14, 12, 11 and 10, who live with their father. (ECF No.10, p.36).

Plaintiff completed high school and one year of college. (ECF No.10, pp36, 38). Her reported work history over the past 15 years includes work as a retail cashier, a waitress, a medical assistant and a phlebotomist. (ECF No.10, pp.38-39, 136-140, 166-173, 186).

Plaintiff reports that she has her children stay with her every other weekend however, the record contains indications that her visitation is less regular (ECF No.10, p.578 (not allowed to visit her children in 2009), and affected by her substance abuse[1]. (ECF No.10, pp.642, 678(only allowed to see children once a week for 3-4 hours)). The record is similarly contradictory regarding where plaintiff lives but it is clear that she does not have her own housing and depends on boyfriends or family members for housing. (See e.g.; ECF No.10, pp.37, 648, 661, 667, 672, 675, 678 ).

### B. Medical History

Plaintiff is a consistently poor historian however her medical record demonstrates that since 2007, she has complained of depression, insomnia, racing thoughts, panic-like episodes. (ECF No.10, p.205). In May, 2007, Dr. Scholten diagnosed plaintiff with mood disorder(s) with

---

[1] In hearing testimony, plaintiff testified to continuing to use heroin "every other day" "on top of" her other prescribed medications. (ECF No. 10, pp.40-43).

major anxiety component and opiate dependence. (ECF No.10, p.206). Dr. Scholten referred plaintiff for psychotherapy and continued her anti-depressant, anti-anxiety and anti-seizure medications. *Id.* Plaintiff continued in therapy for the following year. (ECF No. 10, p.197-204).

On August 29, 2008, plaintiff presented in the Denver Health Emergency Room and reported that she had been sexually assaulted. (ECF No. 10, p.404). She was examined, treated and discharged home. *Id.* On September 2, 2008, she presented in the University of Colorado Emergency Room with an apparent overdose. (ECF No.10, pp. 566-575). She denied that this had been a suicide attempt. (ECF No.10, p.568).

On September 5, 2008, plaintiff was brought to Denver Health Medical Center (DHMC) by ambulance following an overdose of Ativan and alcohol." (ECF No.10, pp.370-379). She was admitted on a psychiatric admission despite claiming this was an accidental overdose because her family reported that she was increasingly depressed, anxious and had reported "frequent thoughts of wishing she were dead." (ECF No.10, p.371). She was discharged to her sister's house three days later. (ECF No.10, p.392). Her September 8, 2008, discharge summary notes that plaintiff had repeatedly overdosed over the past six months with Ativan and Tylenol, reported heavy alcohol use of a pint of vodka daily and had attempted suicide by a Tylenol overdose approximately five months previous to this admission. (ECF No.10, p.366).

On September 12, 2008, plaintiff again presented in the DHMC Emergency Room (ER). (ECF No.10, pp.357-366). This time plaintiff was accompanied by the police who had been called by her grandmother following plaintiff's intoxicated verbal altercation with her family. *Id.* Plaintiff was discharged the following day with a GAF of 45 and stated plans to follow up with Dr. Scholten. (ECF No.10, p.364).

On October 31, 2008, plaintiff was seen in psychiatric evaluation by Dr. Bammes who diagnosed her with recurrent bi-polar disorder, PTSD, panic disorder and alcohol dependence. (ECF No.10, pp.465-466). Dr. Bammes prescribed various anti-seizure and anti-depressant medications and scheduled plaintiff for a follow-up appointment in 4 weeks. *Id.*

Plaintiff next presented in DHMC ER on November 19, 2008, with withdrawal symptoms requesting substance abuse treatment. (ECF No.10, pp.343-348). She reported her last use of heroin was four days prior. (ECF No.10, p.347). She was determined to be a low suicide risk and discharged with referrals for treatment. (ECF No.10, p.348). Plaintiff was next seen, examined and treated at DHMC ER on November 27, 2008, for a sore throat, at which time she tested positive in a drug screen despite denying drug use. (ECF No.10, pp.338-339).

On January 3, 2009, plaintiff presented in the DHMC ER. (ECF No.10, pp.334-338). She appeared intoxicated and had sustained a laceration above her left eyebrow after a fall. *Id.* She was X-rayed (with normal results), sutured and discharged home. (ECF No.10, p.334).

Plaintiff was hospitalized at North Colorado Medical Center (NCMC) from January 24 through January 27, 2009 for detoxification and evaluation after threatening to slit her wrists. (ECF No.10, p.577-578). Dr. Venard's history noted that plaintiff reported that she: was currently living with her boyfriend and had been since October 2008; was abusing alcohol and experiencing frequent blackouts; was using heroin via "skin pops" within the previous four weeks and smoking crack cocaine over the last year with her last cocaine use reported as two weeks prior. (ECF No.10, p.578). At that time plaintiff was not allowed to visit her children. *Id.*

Dr. Clark also examined plaintiff on January 24, 2009, diagnosing her with "Bipolar 2 disorder versus drug induced mood disorder", alcohol dependence, methamphetamine, opiate

4

and cocaine dependence. (ECF No.10, pp.581-82). Plaintiff left NCMC against medical advice, before completing the detox program. (ECF No.10, p.577).

Plaintiff had multiple subsequent admissions to the McKee Medical Center ER. On January 28, 2009, she requested narcotics for her back pain. (ECF No.10, p.591). On February 6, 2009, she presented smelling strongly of alcohol and was diagnosed with alcoholism, gastritis from alcoholism and mild pancreatitis. (ECF No.10, pp.583-588).

Plaintiff presented in Porter Adventist Hospital (Porter) ER on September 3, 2009, with abdominal pain, nausea and vomiting. (ECF No.10, pp.249-278). She was admitted overnight, rehydrated and discharged home the next day after all tests returned within normal limits. *Id.* She returned to Porter on September 13, 2009 and was admitted with a Tylenol overdose. (ECF No.10, pp.208-248). Plaintiff stated she had stopped drinking three days prior and had taken the Tylenol to control her withdrawal symptoms, was increasingly depressed but not suicidal. (ECF No.10, p.222). She reported that she had been on methadone for approximately one year before she quit in January or February 2008, to resume her heroin use which despite a positive opiate test, she reported she had quit one month prior to this admission. (ECF No.10, p.223). She did admit to taking Percocet as prescribed by her primary care provider. *Id.*

On October 1, 2009, plaintiff presented at DHMC requesting admission for methadone treatment. (ECF No.10, pp.298-324). She denied "illicit substance use" since the day before. (ECF No.10, p.301). She was admitted to the methadone program. (ECF No.10, pp.323-324). She complained of panic attacks and was treated for them as well as for her opiate addiction and anxiety/depression through November 2009. (ECF No.10, p.286).

Plaintiff was seen and evaluated by Dr. Musgraves on December 8, 2009. (ECF No.10, pp.432-434). Dr. Musgraves diagnosed plaintiff with depression, moderate anxiety and panic

attacks. (ECF No.10, p.434). The record shows that by December 2009, plaintiff was again abusing Percocet, alcohol and heroin. (ECF No.10, p.283).

Plaintiff was admitted to DHMC on April 14, 2010 on a mental health hold when she presented with her second overdose in six weeks. (ECF No.10, pp.546-553). She was discharged on May 18, 2010 with a GAF score of 36 and a diagnosis of bipolar disorder, alcohol and opiate dependence. (ECF No.10, pp.543-544). She was instructed to follow-up with a MHCD therapist and Dr. Musgraves the following week. (ECF No.10, p.543).

From September 22, 2010 through May 25, 2010, the record indicates that plaintiff was in therapy at the Mental Health Center of Denver. (ECF No.10, pp.626-722). During that time plaintiff's counselor(s) reported her sometimes appearing drowsy at appointments, probably using drugs again, hard to contact, missing appointments, and intermittently reporting that she no longer had a craving for drugs or alcohol. *Id.*

### III    APPLICABLE LAW and STANDARD OF REVIEW

An individual seeking disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5). The Act defines "disabled" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A).

To meet this burden, a plaintiff must provide medical evidence of both, an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and of the severity of that impairment during the time of his/her alleged disability. 42 U.S.C. § 423(d)(3); 20 C.F.R. §§404.1512(b) and 416.912(b). A plaintiff is disabled only if his/her impairments are

of such severity that s/he is not only unable to do his/her previous work but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work in the national economy.  42 U.S.C. §423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§404.1520; 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988).  Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied.  20 C.F.R. §§ 404.1520, 416.920.  Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is unable to show that her medical impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits.

Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the impairment is not listed, she is not presumed to be conclusively disabled.  Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity (RFC) prevent her from performing work that she has performed in the past.  If the claimant is able to perform her previous work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e) and (f), 416.920(e) and (f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps above, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).

In addition, when there is medical evidence of a substance use disorder and the substance use disorder is a contributing, material factor to the asserted disability, a claimant is not considered to be disabled under the Social Security Act.  This means that, a claimant is not considered to be disabled for Social Security purposes, if alcoholism or drug addiction is a contributing, material factor in determining that the individual would, except for this restriction, be disabled.  12 U.S.C. §423(d)(2)(C).  In making this determination, an ALJ must evaluate the extent to which a claimant's mental and physical limitations would remain if the claimant stopped the substance abuse.  If the remaining limitations would not be disabling, the substance abuse disorder constitutes a contributing factor material to the determination of disability.  20 C.F.R §§ 404.1535 and 416.935.

In reviewing a decision of the Commissioner, the court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence.  *Grogan v. Barnhart,* 399 F.3d 1257, 1261-62 (10th Cir. 2005).  The court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner even if the court might have reached a different conclusion.  *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994).

### IV   DISCUSSION

Plaintiff seeks review arguing that: (1) the ALJ's summary of the evidence was inaccurate and not supported by substantial evidence; (2) the ALJ erred in failing to find plaintiff's anxiety, depression and PTSD severe impairments; (3) the ALJ used the wrong legal standard in her evaluation of plaintiff's mental impairments and (4) the ALJ's residual functional capacity (RFC) assessment and her determination that plaintiff could perform her past relevant work were not supported by substantial evidence.  (ECF No. 13).

Defendant responds that: (1) plaintiff is essentially objecting to the ALJ's credibility determination; (2) the ALJ not finding plaintiff's depression, PTSD and anxiety severe impairments was harmless error and (3) the ALJ used proper legal standards and reasonably determined that plaintiff retained the RFC to perform a range of unskilled light work and thus was not disabled. (ECF No. 14).

In Step One, the ALJ found the plaintiff met the insured requirements through December 31, 2010 and in Step Two, she found that plaintiff had not engaged in substantial gainful activity since December 12, 2008. (ECF No. 10, p.19). In determining that plaintiff had severe impairments of bipolar disorder, heroin addiction and back pain in Step Three, the ALJ explained her reasoning for excluding plaintiff's fractured foot and hypothyroidism. (ECF No. 10, pp.19-20). However, there was no explanation of the ALJ's reason(s) for excluding plaintiff's medically documented history of panic attacks, anxiety, depression and PTSD. *Id.*

The ALJ then found that plaintiff had no mental impairments singly or in combination, that met or equaled the criteria of listings but, had mild restrictions in daily living activities and moderate difficulties in social functioning and with regard to her ability to concentrate, and/or in her persistence or pace. (ECF No. 10, p.20).

In finding the plaintiff has the RFC to perform light work, the ALJ detailed the foundation underpinning her finding, as: plaintiff's statements that she would use heroin after work and its use affected her ability to work only "a little"; that plaintiff gave inconsistent statements to her treatment providers; that plaintiff's treatment record did not reflect the significant symptoms she reported in her hearing testimony and plaintiff's treating providers doubted that her statements were reliable. (ECF No. 10, pp.21-24).

Finally the ALJ concluded that plaintiff was unable to do her past relevant work but given her relative youth, education and RFC, she could perform the requirements of occupations such as, housekeeper, production assembler and small products assembler and was therefore not disabled. (ECF NO.10, pp.25-26).

While the record provides abundant support for the ALJ's finding that plaintiff lacks credibility, it does not provide the necessary substantial support for the ALJ's findings with regard to plaintiff's claims of disabling depression, anxiety and/or panic attacks. As noted above, plaintiff first complained of panic-like episodes in 2007. The record is replete with evidence that for the relevant time period, plaintiff had frequent ER admissions (at times almost monthly), for suicide attempts and overdoses. (ECF No.10, pp.209, 212-13, 395-96, 546-50, 553-54, 578). While those may indeed have been a result of her substance abuse, there is nothing in the record to support a finding that they were not a result of plaintiff's depression and anxiety.

The Disability Determination Service (DDS) psychologist's report provides the single slender thread of expert support for the ALJ's RFC findings. This report and opinion based on a record review alone, gave no indication what, if any, effect the plaintiff's polysubstance abuse would have on her RFC. However, based on that report, as well as various occasions where plaintiff's somnolent appearance contradicted her denied use of drugs, and the ALJ's own observation that none of plaintiff's providers directly opined that she "is disabled from working or recommended any work or activity restrictions as a result of her impairments", the ALJ concluded that when not using drugs, plaintiff "typically demonstrated a normal mental status and normal behavior." (ECF No.10, pp.23-24).

The ALJ also bases her opinion that plaintiff is not disabled on the vocational expert (VE) testimony. (ECF No.10, p.26). However the hearing transcript reveals that when the ALJ added absenteeism of more than two days per month or panic attacks that required the hypothetical individual to take a 15-20 minute breaks several times a month, the VE testified that none of the representative jobs would be available. The ALJ failed to reconcile her finding that plaintiff is capable of performing other work with that VE testimony.

It is well established that "findings of a nontreating physician based upon limited contact and examination are of suspect reliability." *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). In this instance, the DDS psychologist's report simply cannot bear the weight placed upon it by the ALJ. Nor do the ALJ's observations of the record supply the necessary substantial evidence.

A consultative examination should be ordered when evidence in the record (such as in the instant case), establishes the reasonable possibility of the existence of a disability and a consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability. *Hawkins v. Chater,* 113 F.3d 1162, 1169 (10th Cir. 1997). If a medical or psychological examiner cannot project what limitations would remain should the plaintiff stop abusing drugs and/or alcohol, the disability examiner should find that drug and alcohol abuse is not a contributing factor material to the disability determination. *Salazar v.* Barnhart, 468 F.3d 615, 623 (10th Cir.2006).

Here plaintiff has presented sufficient medical evidence to warrant further analysis, if not investigation and medical opinion of her claim of disabling panic attacks, depression and anxiety, absent her polysubstance abuse. Accordingly, when the record is viewed as a whole, I find that there is not substantial evidence to support the ALJ's ultimate conclusion and remand this matter for further proceedings.

## V.     CONCLUSION

Having thoroughly reviewed the evidence in the record, the transcript of the administrative hearing, the ALJ's decision and the parties' pleadings, this case is REVERSED AND REMANDED to the Commissioner for further findings as directed above.

IT IS SO ORDERED

DATED this 27th day of July, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge